UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
                                              :

BALWINDER KAUR,                        :         **MEMORANDUM**
                    Plaintiff,      :         **DECISION AND ORDER**
                                                :

           - against -           :         19-cv-4130 (BMC)
                                                  :

COMMISSIONER OF SOCIAL SECURITY,   :
                                                  :

                   Defendant.     :

--------------------------------------------------------- X

**COGAN**, District Judge.

       Plaintiff Balwinder Kaur seeks review of the decision of the Commissioner of Social

Security denying her disability insurance benefits under the Social Security Act.  After a hearing,

an Administrative Law Judge found that plaintiff suffered from severe impairments of

degenerative disc disease of the lumbar spine, left knee degenerative joint disease, and right knee

derangement.  However, the ALJ also found that these impairments did not meet or medically

equal the severity of one of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The

ALJ then found that plaintiff had the residual functional capacity to perform the full range of

sedentary work in 20 C.F.R. § 404.1567(a).  The ALJ then found that plaintiff was capable of

performing her past relevant work as an office manager.  Thus, the ALJ concluded, plaintiff was

not "disabled" within the meaning of the Social Security Act.

       Plaintiff claims three points of error: (1) that substantial evidence does not support the

ALJ's determination that her lumbar impairment did not meet or equal one of the impairments in

the Listing of Impairments; (2) that substantial evidence does not support the ALJ's

determination that she had the residual functional capacity to perform sedentary work; and

(3) that the ALJ did not properly assess her subjective complaints of pain.  I conclude that the

ALJ did not commit a procedural error that warrants reversal and that substantial evidence supports the ALJ's decision.

## I.      The Listing of Impairments

The "Listing of Impairments" is the list of "physical and mental impairments which, if met, are conclusive on the issue of disability." Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013) (quotation omitted). Listing 1.04(A) covers certain spinal disorders:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04(A). The claimant bears the burden of demonstrating that a condition meets "all of the specified medical criteria of a spinal disorder," which means "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Ryan v. Astrue, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (quotations omitted).

Although the ALJ did not explain his conclusion that plaintiff failed to meet these criteria, "[t]here does not appear to be a well-settled requirement that an ALJ provide an explanation for his conclusion at [this step] of the analysis." Norman v. Astrue, 912 F. Supp. 2d 33, 78 (S.D.N.Y. 2012). Rather, "the absence of an express rationale for an ALJ's conclusions does not prevent [a court] from upholding them so long as [the court is] 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'" Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109,

112 (2d Cir. 2010) (summary order) (quoting <u>Berry v. Schweiker</u>, 675 F.2d 464, 469 (2d Cir. 1982) (per curiam)); <u>see also</u> <u>Jeske v. Saul</u>, 955 F.3d 583, 589–90 (7th Cir. 2020) (applying this framework in the context of Listing 1.04(A)).

Here, the record contains some evidence of nerve root compression. Multiple physicians assessed lumbar radiculopathy, a condition that may suggest nerve root compression. <u>See</u> <u>Norman</u>, 912 F. Supp. 2d at 78. Further, a May 2018 MRI showed an L2-L3 disc herniation abutting the proximal L3 nerve roots, providing additional evidence of nerve root compression. <u>See</u> <u>Davis v. Astrue</u>, No. 6:09-cv-186, 2010 WL 2545961, at *4 (N.D.N.Y. June 3, 2010), <u>report and recommendation adopted</u>, 2010 WL 2545694 (N.D.N.Y. June 21, 2010).

Plaintiff has failed to demonstrate that her condition could satisfy the remaining elements of Listing 1.04(A). When assessing other aspects of plaintiff's claims, the ALJ pointed to the opinion of Dr. Susan Maltser, D.O., one of plaintiff's treating physicians. Plaintiff saw Dr. Maltser throughout 2016 to treat her back and leg pain. Dr. Maltser assessed lumbar radiculopathy, and she prescribed various medications, administered trigger point injections, and referred plaintiff to physical therapy. In June 2016, Dr. Maltser provided a medical source statement. She observed that plaintiff had "normal" deep tendon reflexes and "normal" muscle strength in all extremities. She then opined that plaintiff could lift and carry no more than 10 pounds, could push or pull no more than 10 pounds, and could stand or walk for only 30 minutes at a time.

However, Dr. Maltser also opined that plaintiff had "[n]o [l]imitation" in sitting. That opinion undermines plaintiff's claim to have suffered "motor loss (atrophy with associated muscle weakness or muscle weakness)," as required by Listing 1.04(A). Especially because Dr. Maltser was plaintiff's treating physician, her opinions provide substantial evidence that supports

the ALJ's determination.  See Sanders v. Comm'r of Soc. Sec., 506 F. App'x 74, 76 (2d Cir.

2012) (summary order) (substantial evidence supported the ALJ's determination that the

plaintiff's condition did not meet the criteria for Listing 1.04(A) where examination notes stated

that "[m]uscle strength is 5/5 in [the plaintiff's] bilateral upper and lower extremities"); Otts v.

Comm'r of Soc. Sec., 249 F. App'x 887, 889 (2d Cir. 2007) (summary order) (concluding that

the plaintiff "did not carry her burden as to the other definitional criteria" for Listing 1.04(A)

where examination notes stated that "[t]here was no muscle atrophy," that "[f]ine motor activity

of the hands (dexterity) was intact," and that the plaintiff's "grip strength was 5/5 bilaterally").

## II.      Plaintiff's Residual Functional Capacity

Plaintiff also argues that substantial evidence does not support the ALJ's decision that she

had the residual functional capacity to perform the full range of sedentary work in 20 C.F.R.

§ 404.1567(a).  Plaintiff makes two interrelated challenges.  First, she argues that the ALJ did not

properly evaluate the opinions of her treating physicians.  Second, she argues that the ALJ

improperly relied on the opinions of the consulting physician.

Both arguments allude to the procedures that an ALJ must follow when determining the

appropriate weight to assign a treating physician's opinion.  See generally Estrella v. Berryhill,

925 F.3d 90, 95–96 (2d Cir. 2019); Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008).  If an

ALJ decides not to assign controlling weight to a treating physician's opinion, the ALJ must

"explicitly consider . . . (1) the frequency, length, nature, and extent of treatment; (2) the amount

of medical evidence supporting the opinion; (3) the consistency of the opinion with the

remaining medical evidence; and (4) whether the physician is a specialist."  Estrella, 925 F.3d

at 95–96 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).  These

procedures "make clear that comparing a treating physician's opinion to that of a single-shot

consultant, or a physician that reviews only limited records, requires some skepticism on the part

of the ALJ," even though "the ALJ is not *per se* precluded from giving a consultant's opinion

controlling weight." Gonzalez v. Saul, No. 19-cv-2946, 2020 WL 7385712, at *2 (E.D.N.Y.

Dec. 16, 2020).

The problem for plaintiff is that the ALJ did not give the consultant's opinion more

weight than the opinion of her treating physicians. The ALJ gave "good weight" to the opinion

of the consultant, Dr. Syeda Asad, M.D., who opined that plaintiff had "moderate limitations for

squatting, kneeling, bending, walking, and standing for a long period of time" as well as for

"lifting, carrying, or pushing any objects." Dr. Asad did not note any limitations in sedentary

activity. That opinion is consistent with Dr. Maltser's opinion that plaintiff could lift and carry

up to ten pounds, could stand and walk for 30 minutes at a time, and had no limitation in sitting.

And the ALJ assigned Dr. Maltser's opinion the same weight as Dr. Asad's opinion: "good

weight, as it [was] consistent with the record as a whole." Thus, the treating physician's opinion

does not undermine the ALJ's decision – it supports it.[1]

The other treating physicians did not offer opinions that would detract from the ALJ's

decision. For purposes of plaintiff's claim, social security regulations define "medical opinions"

as "statements from acceptable medical sources that reflect judgments about the nature and

severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and

---

[1] Both plaintiff and the ALJ seem to have misidentified Dr. Maltser. The ALJ called her "Dr. Susi Malysiv," while plaintiff has attributed her opinions to "Dr. Susi Malysv," casting her as a consultant rather than a treating physician. But the relevant record citations show that plaintiff and the ALJ were referring to Dr. Maltser. Both cite the June 2016 medical source statement. Although the signature line does appear to say "Susi Malysv, D.O.," the line directly above it lists the facility as Norwell Health, where Dr. Maltser works, as well as Dr. Maltser's phone number at that facility. The form also indicates that the doctor has been treating the patient for pain since January 8, 2016, which matches the date of plaintiff's first appointment with Dr. Maltser. Thus, it was plaintiff's own treating physician, not a consultant, who opined that plaintiff had no limitations in sitting. That means this case does not raise the concern of an ALJ having prioritized the opinion of a single-shot consultant over the opinions of physicians who were far more familiar with the plaintiff's condition.

prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).[2] Here, plaintiff points to three treating physicians, but plaintiff cites only their treatment notes, and these treatment notes do not contain medical opinions regarding the key issue in this case – namely, plaintiff's ability to perform sedentary activity.

The first physician is Dr. Shaheda Quraishi, M.D., who first saw plaintiff in 2014 to address pain in her neck, legs, and lower back. Dr. Quraishi assessed low back pain, lumbar radicular pain, post-laminectomy syndrome, and painful orthopedic hardware. She prescribed medication, and when that failed to alleviate the pain, she recommended epidural injections along with physical therapy. Plaintiff eventually received several injections. She saw Dr. Quraishi through at least 2018.

Next, plaintiff references Dr. Rohit Verma, M.D., an orthopedic surgeon who performed some of plaintiff's surgeries. At various points in 2014, he assessed pseudarthrosis following spinal fusion, lumbar radiculopathy, lumbar disc degeneration, and "painful orthopedic hardware" left over from a prior surgery. Imaging revealed neuroforaminal stenosis and robust fusion. Then, in April 2015, Dr. Verma noted that plaintiff reported that her pain is "worsened by prolonged sitting." That same month, Dr. Verma performed a surgery that included an exploration of lumbar fusion and removal of spinal implants at L5-S1; resection of scar tissue around the hardware, which created dead space; and paraspinal mobilization with myofascial release for wound closure purposes. At follow-up appointments, Dr. Verma observed that plaintiff had a "normal" gait, that plaintiff had regained "5/5 motor strength in bilateral lower extremities," and that her lumbar range of motion was "painful" but "full."

---

[2] This section applies because plaintiff applied for disability insurance benefits on January 29, 2016, before the March 17, 2017 cutoff date.

Finally, plaintiff mentions another orthopedic surgeon, Dr. Sreevathsa Boraiah, M.D. Plaintiff saw Dr. Boraiah in 2016 to address pain in her left knee.  He noted that plaintiff "ha[d] some early degenerative changes" and that "clicking and catching [was] coming from [a] meniscus tear."  He assessed an acute medial meniscal tear.  After he performed arthroscopic surgery, he opined that plaintiff was "progressing well," observed that plaintiff's range of motion was "pain free," and described the neurological exam as "unremarkable."  Later, he assessed primary localized osteoarthritis in plaintiff's left knee, noting that an x-ray "show[ed] a medial compartment osteoarthritis almost bone-on-bone."  He pursued a "conservative" treatment plan consisting of physical therapy and injections.

Taken together, these physicians' treatment notes detail plaintiff's ongoing struggles with back and knee pain, but contrary to plaintiff's assertions, they do not contain medical opinions that plaintiff cannot engage in sedentary activity.  Tellingly, plaintiff has not pointed to anything specific in any of the treatment notes that would contradict Dr. Maltser or Dr. Asad's opinion that plaintiff has no limitation in sitting.  Thus, the treatment notes do not contain the kinds of opinions that have led reviewing courts to vacate ALJs' decisions.  See Estrella, 925 F.3d at 95 (addressing a treating physician's Medical Source Statement submitted to the Office of Disability Adjudication and Review); Deanna S. v. Comm'r of Soc. Sec., No. 2:17-cv-936, 2020 WL 813635, at *4 (W.D.N.Y. Feb. 19, 2020) (addressing treatment notes which included "Disability Status" notes).

Still, plaintiff argues that if her treating physicians did not provide medical opinions, the ALJ had an obligation to seek them out.  As she notes, the Second Circuit has held that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel."  Rosa v. Callahan,

168 F.3d 72, 79 (2d Cir. 1999) (Sotomayor, J.) (quotation omitted).  But there is a "flip-side" to

that holding – "where there are no obvious gaps in the administrative record, and where the ALJ

already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional

information in advance of rejecting a benefits claim."  Id. at 79 n.5 (quoting Perez v. Chater, 77

F.3d 41, 48 (2d Cir. 1996)).

This case falls within that second category.  The consultant and one of plaintiff's treating

physicians opined that plaintiff had no limitation in sitting.  Plaintiff has not pointed to any

specific observation from her other physicians that would call that opinion into question, and the

record contains volumes of treatment notes from these physicians covering several years of

treatment.  In these circumstances, I cannot say that the ALJ had an obligation to develop the

record any further.

Substantial evidence thus supports the ALJ's determination that plaintiff had the residual

functional capacity to perform the full range of sedentary work in 20 C.F.R. § 404.1567(a).

## III.    Plaintiff's Credibility

Finally, plaintiff argues that the ALJ did not properly assess her subjective complaints of

pain.  "When determining a claimant's [residual functional capacity], the ALJ is required to take

the claimant's reports of pain and other limitations into account, but is not required to accept the

claimant's subjective complaints without question; he may exercise discretion in weighing the

credibility of the claimant's testimony in light of the other evidence in the record."  Genier v.

Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted).  Generally speaking, "[t]he

regulations provide a two-step process for evaluating a claimant's assertions of pain and other

limitations."  Id.  First, the ALJ must "decide whether the claimant suffers from a medically

determinable impairment that could reasonably be expected to produce the symptoms alleged."

Id. (citing 20 C.F.R. § 404.1529(b)).  Second, the ALJ must "consider 'the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record."  Id. (quoting 20 C.F.R. § 404.1529(a)) (alteration adopted).  "[T]he ALJ's reasoning must be set forth with sufficient specificity to permit intelligible plenary review of the record."  Horn v. Comm'r of Soc. Sec., No. 13-cv-1218, 2015 WL 4743933, at *27 (E.D.N.Y. Aug. 10, 2015) (quotation omitted).

Here, plaintiff testified that she cannot perform sedentary work due to her pain.  She stated that she could sit for only 45 minutes, on only two to three occasions per day.  She added that she can stand for 30 to 40 minutes at a time and that she spends most of the day lying down.  Further, she could lift no more than two or three pounds, and she had problems squatting, kneeling, and bending down.  The ALJ determined that plaintiff's medical impairments could reasonably be expected to produce these alleged symptoms but her statements "concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."

I cannot conclude that the ALJ erred in making that determination.  The ALJ properly relied on the fact that plaintiff left her work as an office manager for business reasons, not due to her impairments.  See Thurman v. Berryhill, No. 6:16-cv-6082, 2017 WL 2177620, at *4 (W.D.N.Y. May 18, 2017).  The ALJ also properly relied on the opinions of Dr. Asad and Dr. Maltser.  When an ALJ's determination that a plaintiff can perform the full range of sedentary work is "generally consistent with [a treating physician's] opinion," courts have upheld that determination even when the plaintiff had other limitations.  Hammond v. Colvin, No. 1:12-cv-965, 2013 WL 4542701, at *5 (N.D.N.Y. Aug. 26, 2013); see also Clark v. Colvin, No. 6:12-cv-1507, 2013 WL 6795627, at *14 (N.D.N.Y. Dec. 18, 2013); Magee v. Astrue, No. 06-cv-505,

2009 WL 464930, at *3 (S.D.N.Y. Feb. 25, 2009).  On this record, therefore, the ALJ did not err in evaluating plaintiff's subjective complaints of pain.

      Plaintiff's motion for judgment on the pleadings [13] is denied and the Commissioner's cross-motion for judgment on the pleadings [16] is granted.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      January 20, 2021